[Civ. No. 4924. Fifth Dist. Oct. 16, 1981.]

**OPAL LEE CONN et al., Plaintiffs and Appellants, v. NATIONAL CAN CORPORATION, Defendant and Respondent.**

632

COUNSEL

Strauss, Neibauer & Anderson and John J. Hollenback, Jr., for Plaintiffs and Appellants.

Martin, Crabtree, Schmidt & Zeff, Robert W. Crabtree and James E. Mesnier for Defendant and Respondent.

---

**OPINION**

**WOOLPERT (W. R.), J.\*—**

STATEMENT OF THE CASE

The appeal is by union members who brought this action against their employer and the union to which they belonged and which was certified as their bargaining agent. Prior to the appearance of the union defendant the respondent employer was granted summary judgment. Though the ultimate issues concern labor law, a reversal is required because of the failure to properly apply summary judgment principles to the papers before the trial court.

For our purposes the facts are important only to illustrate the summary judgment problem presented the court. Appellants (employees) had seniority rights ranging from 18 to almost 20 years. Respondent (employer) and the defendant bargaining agent (union) entered into an employment contract, with the employees' approval. The contract provided that employees upon achieving 20 years status would be entitled to 13 weeks paid leave. Also, laid off employees were to have seniority rights which permitted the "bumping" of less senior employees of similar category.

The complaint is simply that these employees were laid off just short of their 20-year goal, thereby depriving them of the special leave, and then were refused bumping privileges though less senior employees were working. It is alleged that the employer and union conspired to cause the employees to lose these employment rights. The conspiracy being for certain mutual advantages of the employer and union, it is charged that the union thereby breached its duty of fair representation.

Of labor law significance, the multicount complaint sets forth the relationship of the parties, the employment and contract, and the conspiracy resulting in the untimely loss of employment, all leading to a prayer for injunctive relief and damages. In anticipation of the defense

---

*Assigned by the Chairperson of the Judicial Council.

of failure to exhaust contractual remedies, the employees allege that the union was their collective bargaining agent and had a fiduciary duty of fair representation. At some length, various union actions and inactions are alleged which amounted to a refusal of the union to institute grievance proceedings or to otherwise fairly and diligently protect the employees' interests in the administration of the collective bargaining agreement.

Though the complaint is somewhat uncertain in its factual allegations, and lacking in specifics, the alleged union activity included refusal to act, purposeful concealment, and false representations. A demurrer was filed by the employer. We assume that it was taken off calendar on respondent's choice to try the summary judgment procedure without any attempt to clarify the complaint by demurrer. From what transpired later, it is clear that the employer was confident that even admitting the wrongful breach of contract, it would be insulated from any recovery by these employees because of their failure to exhaust the grievance procedure provided by the agreement.

## THE APPLICABLE LABOR LAW

A collective bargaining agreement traditionally covers the employment terms, rights and obligations, and sets forth procedures for a nonjudicial resolution of employee complaints. The union part in the labor triangle is that of being the employees' bargaining agent, with express and implied duties of "fair representation." As in this case, the contract spells out a multilevel grievance procedure with precise time requirements. The result is a final one if the dispute is properly resolved. Mere neglect on the part of the employee or his union representative may bar relief because of this contractual process. With certain exceptions there is no court remedy available.

An exception to the finality provision of the contractual grievance procedure depends upon proof of union fiduciary misconduct of the kind alleged in this case. If the union agent fails in its duty of fair representation in a manner amounting to more than mere neglect, the employer and union may be successfully sued by the employee in either a federal or state court. A recent publication, in discussing the union duty of fair representation, had this to say:

"The employer has an interest in the union's proper performance of its duty of fair representation because the employer may be exposed to

liability in a variety of factual situations in which the collective bargaining agreement has been breached and the union has not properly represented an employee in the bargaining unit. For example, the union's wrongful refusal to prosecute an employee's grievance properly may expose the employer to suit by the employee for breach of contract. See *Vaca* v. *Sipes* (1967) 386 U.S. 171, discussed in § 11.8. In *Hines* v. *Anchor Motor Freight, Inc.* (1976) 424 U.S. 554, the employer was held subject to liability when the union had taken the grievance to arbitration but had not adequately investigated the underlying facts. . . .

"Remedies that may be sought from the employer include back pay (see *Vaca* v. *Sipes, supra*), reinstatement (see *De Arroyo* v. *Sindicato de Trabajadores Packinghouse* (1st Cir. 1970) 425 F.2d 281), and monetary damages (see *De Arroyo, supra*; *Richardson* v. *Communications Workers* (8th Cir. 1971) 443 F.2d 974) . . . .

"Thus employer's counsel should be familiar with the union's duties in representing bargaining unit employees under the collective bargaining agreement and be alert to situations that may subject the employer to lawsuits by employees even though it has not participated in the union's misfeasance or malfeasance." (Advising Cal. Employers (Cont.Ed.Bar 1981) Employer Considerations, § 11.1, p. 484.)

One of the appellants apparently used the grievance procedure but not the last level of review. He claimed that the process was aborted because of a refusal to hear certain evidence. ■ On the subject of a challenged use of the grievance procedure, the United States Supreme Court has stated: "Even though under *Vaca* the employer may not insist on exhaustion of grievance procedures when the union has breached its representation duty, it is urged that when the procedures have been followed and a decision favorable to the employer announced, the employer must be protected from relitigation by the express contractual provision declaring a decision to be final and binding. We disagree. The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures; if it seriously undermines the integrity of the arbitral process the union's breach also removes the bar of the finality provisions of the contract." (*Hines* v. *Anchor Motor Freight, Inc.* (1976) 424 U.S. 554, 567 [47 L.Ed.2d 231, 243, 96 S.Ct. 1048, 1058].)[1]

---

[1]California cases relied on by respondent which state without qualification that the finality provisions of a contract are binding (e.g., *Cortez* v. *Cal. Motor Express Co.*

Therefore, when the demurrer was taken off calendar and the motion for summary judgment was argued, the complaint alleged certain joint efforts of the employer and union agent to deprive the employees of contractual rights, with an affirmative challenge to the union's fair representation in the grievance process. To be successful at trial the employees would have to prove the union's unfair conduct in order to overcome the protective shield ordinarily provided by such collective bargaining agreement grievance procedures.

## THE SUMMARY JUDGMENT ERROR

A motion for summary judgment may be made even though no answer is on file and a demurrer has not yet been decided. (*Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 746-747 [19 Cal.Rptr. 709]; *Orange County Air Pollution Control Dist.* v. *Superior Court* (1972) 27 Cal.App.3d 109, 112, fn. 2 [103 Cal.Rptr. 410]; Code Civ. Proc., § 437c.) However, if there are pleading or discovery problems, it may be more prudent to delay the motion until after a full use of demurrer, requests for admissions, interrogatories and depositions. (*Segura* v. *Brundage* (1979) 91 Cal.App.3d 19, 29 [153 Cal.Rptr. 777].) In this case the parties stipulated to a waiver of time so as to bring the motion without waiting the usual 60 days.

 Attached to the employer's motion were declarations by its own officers affirming the nature of the contract and swearing to the failure of the employees to use the contractual grievance remedies, excepting the one plaintiff who had only done so in part. Each declared that the company had not refused to cooperate with the employees or union. No union representative declaration was filed and no employer declaration attempted to question the allegations in the complaint as to (1) the employer's contractual violations, (2) the conspiracy, or (3) the union failure to fairly represent the employees in the grievance process.

As we will shortly point out, it was unnecessary for the employees to present declarations on the subject of unfair representation. Nevertheless, they proceeded to do so. Challenges were made to these declarations and objections to certain parts of them were sustained. Enough

(1964) 226 Cal.App.2d 257, 261 [38 Cal.Rptr. 29]; *Archuleta* v. *Grand Lodge, etc. of Machinists* (1968) 262 Cal.App.2d 202, 208 [68 Cal.Rptr. 694]) are pre-*Hines* v. *Anchor Motor Freight, Inc.* Generally, the finality provisions of a contract are binding. However, as *Hines* held, if there has been a breach of the duty of fair representation, the finality provisions of a contract may not be binding on the employee.

was left in them to make a colorable showing of controversies between the employees and the union representatives concerning the grievance process and the wisdom of using such contractual procedures.

We need not resolve the question of the adequacy of the employee declarations to raise inferences of union conduct amounting to more than mere neglect. ■ Summary judgments are reversible on the finding of factual issues based on inferences first drawn by the appellate court. (*Maxwell* v. *Colburn* (1980) 105 Cal.App.3d 180 [163 Cal.Rptr. 912].) We do recognize that an employer declaration that grievance procedures were available and not used may lead to an inference that the employee and union representative "defaulted" on a mere neglect basis. However, a declaration that the *employer* was always willing to cooperate leads nowhere as it misses the labor law point that the employer may be innocently bound by the rule that the finality of the grievance procedure is negated by the unfair conduct of the union without regard to the employer's willingness to "cooperate." If we were to compare the employer's declarations with those filed by the employees we would note that many of the loosely stated facts concerning the union agents' conduct are not only uncontradicted direct evidence but also lead to inferences of unfair representation.

The 1973 amendments to Code of Civil Procedure section 437c made it clear that inferences may be drawn in favor of the moving party, "... except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." In another employment case a reversal was required because of the failure to note conflicting inferences. (*Hepp* v. *Lockheed-California Co.* (1978) 86 Cal.App.3d 714, 718 [150 Cal.Rptr. 408].) We need not make that conclusion here because the error was of a more practical but often misunderstood kind.

■ In the trial court and before us, respondent has emphasized that the plaintiff-employees were required to raise a "triable issue of fact relative to the union's duty of fair representation." The employer urged the trial court to agree with the idea that the *responding* party to the motion "must establish a triable issue of fact ... [and] ... cannot rely on the allegations of their complaint nor merely argue that the complaint states a cause of action." After the matter was submitted, respondent's counsel questioned the court's impression that the uncontroverted portions of the complaint should be considered. Counsel noted

the case of *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 169 [95 Cal.Rptr. 623, 486 P.2d 151] and its comment that "plaintiff cannot rely upon the allegations of his verified complaint to controvert the statements in defendant's declaration." The significance of the quote was misunderstood by counsel. The lower court's first impression was correct, but apparently abandoned.

In a studied decision, the trial court found 13 significant omissions, prefacing each with "It is not known when . . ." or why, whether, etc. The moving party, filing no declarations on the unfair representation issue, and the employees in their declarations being unconvincing and leaving many questions for speculation, caused the court to find that no breach of the union's duty of fair representation had been "demonstrated." The demonstration was required of the wrong party.

In many cases plaintiffs file complaints which plead several causes of action based upon one set of facts. The ultimate success of such an action will depend upon the plaintiff being able to carry the usual burden of proof on at least one of the theories asserted. For example, a medical malpractice case may result in a plaintiff's verdict on proof of either a negligently performed surgery or the lack of informed consent, or both. In another malpractice case the plaintiff may have to prove that there was professional negligence *and* that the cause of action was not discovered within the usual limitations period because of his being unaware of the cause and nature of the injury sustained. However, though in each example the plaintiff has the burden of proof at trial, the initial duty to define the issues presented by the complaint and to challenge them factually is on the defendant who seeks a summary judgment.

Unfortunately, defendants do not always appreciate that these motions shift the usual burden of going forward. Perhaps they misinterpret language such as that quoted above from the *Vesely* case. The *Vesely* admonition simply means that a *plaintiff* may not rely on his verified complaint to controvert his opponent's declarations. Once a defendant files a declaration on the point concerned it must be sufficiently controverted by the plaintiff's *declarations* so as to reveal a triable issue. At that point the court disregards the complaint except as it may set the issues and be of use to the defendant. "A defendant, however, can, in addition to his declaration, rely upon an allegation of the complaint and there is no need that a defendant's declaration repeat matters already asserted in the complaint." (*Brown* v. *City of Fremont* (1977) 75 Cal. App.3d 141, 146 [142 Cal.Rptr. 46].)

■ If, as in this case, the plaintiff pleads several theories or antici-pates affirmative defenses by a show of excusing events or conditions, the challenge to the opponent is made by the complaint, requiring the moving defendant to affirmatively react to each theory *and* excusing or justifying event, or condition which supports a theory, if the motion is to be successful. The moving defendant whose declarations omit facts as to any such theory or its qualifying excuse or justification permits that portion of the complaint to be unchallenged. In that event the plaintiff properly uses his own complaint. He does so, not to controvert the mov-ing party's declaration, or in lieu of one for himself, but rather to show that certain facts or theories remain unchallenged.

In the usual case the defense attorney will check the complaint for facts and theories and then will prepare declarations accordingly. He should do so in order to avoid the consequences of the rule that the court does not look to the allegations of the complaint *"except to the extent they are not controverted by affidavits on either side."* (*Cox* v. *State of California* (1970) 3 Cal.App.3d 301, 309 [82 Cal.Rptr. 896], emphasis original; *McCreery* v. *Eli Lilly & Co.* (1978) 87 Cal.App.3d 77, 82 [150 Cal.Rptr. 730].)

"A moving defendant must show clearly that plaintiff's action has no merit. If a plaintiff's cause of action could be based on either of two theories, he will not be subject to defeat by summary judgment where the defendant's declarations show only that one of the two theories can-not be established. It is the defendant's burden to rule out *all possible merit.* Only if the declarations of the moving defendant considered in light of the issues raised by the pleadings together with the admissions and affirmative allegations set forth in the pleadings of the plaintiff would, standing alone support the summary judgment motion does the court look to any counteraffidavits and counterdeclarations." (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724].)

Respondent complains that the moving party should not have to initi-ate a negative issue, here presumably because the information is in the hands of the employees and union representatives. Though accessability to the factual information might be cause to vary the rule that the de-fendant must bear the initial burden of dispelling a vital factual issue necessary to plaintiff's case, the rule is otherwise. Ample discovery de-vices are available. The classic interrogatory is: "Please state what fact or facts form the basis for the allegations set forth in . . . ." (*Singer* v.

*Superior Court* (1960) 54 Cal.2d 318, 325 [5 Cal.Rptr. 697, 353 P.2d 305].) Interrogatories and depositions may be used in support of a motion for summary judgment. (*State Medical Education Bd.* v. *Roberson* (1970) 6 Cal.App.3d 493, 500 [86 Cal.Rptr. 258].) Discovery even on a "negative" issue should reveal whether a plaintiff in fact has a triable issue which would survive a trial motion for nonsuit.

■ Returning to our facts, the employer's breach of contract, as well as the conspiracy, were not controverted by defense declarations. The employer stood on the single assertion that it was protected against lawsuit because a grievance procedure was available and not properly used. No attempt was made to state any facts on the portion of the complaint alleging the excusing facts of unfair union representation. Instead, the court was urged to find against the employees because of their failure to assume the burden of going forward on that issue. As in the case of *Segura* v. *Brundage, supra*, 91 Cal.App.3d 19, 28, the defendant misconstrued the burden which falls on the moving party. He must generally negative the matters which the resisting party would have to prove at the trial, including such issues as the tolling of the statute of limitations. In *Segura*, the appellate court said, "... we are just none the wiser on the question whether ...." (*Id.*, at p. 29.) Rather than conclude such uncertainties against the plaintiff, as was done below, the *Segura* court placed the burden on the moving party and reversed the summary judgment. So must we.

The judgment is reversed.

Zenovich, Acting P. J., and Hanson (P. D.), J., concurred.